FRANK COLAPIETRO *vs.* THOMAS SARCIONE.

JULY 11, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of assumpsit which was tried to a jury in the superior court and resulted in a verdict for the defendant. The case is here on defendant's exception to the trial justice's decision granting plaintiff's motion for a new trial.

Defendant contends that the trial justice overlooked or misconceived evidence which reasonably tended to support the verdict. He also contends that: "The trial justice had a prefixed disbelief in the verdict that would be rendered by the twelve woman jury." If neither of those contentions is sound, the trial justice's decision must stand unless we find that on all the evidence it is clearly wrong.

Defendant's second contention requires no discussion. From our reading of the transcript, it does not appear that the trial justice based his decision on the composition of the jury. On the contrary, it is quite clear that he was of the opinion that the evidence justified a verdict for the plaintiff. He reviewed the evidence in some detail to show why he had reached that conclusion and why the jury's verdict did not truly respond to the merits of the controversy.

Defendant's first contention, as we understand it, rests on the assumption that in such review of the evidence the trial justice failed to consider all the material evidence which tended to support the verdict or that he misconceived it. If such assumption is correct the trial justice's decision would be lacking in persuasive force. *Anderson* v. *Johnson,* 59 R. I. 241. In such event we would not review the record merely to determine if his decision were clearly wrong, but we would examine the evidence originally to determine for ourselves whether or not there was any ground for granting a new trial. However, after carefully reading the transcript and considering the trial justice's analysis of the evidence in his decision we are satisfied that he neither overlooked nor misconceived any of the material evidence. Hence his decision should not be disturbed unless it is clearly wrong. *Hovas* v. *Cirigliano,* 70 R. I. 227.

According to the evidence, the defendant received from the plaintiff at divers times from 1934 to May 5, 1942, various sums of money for safekeeping. The defendant noted his receipt of each sum in a little red book which was at all times in the possession of the plaintiff. This

book is in evidence as an exhibit. When plaintiff needed money, defendant paid it to him and noted in the book such payment and the balance remaining in his hands. No notations appear in the book after May 5, 1942. On that date there was a balance of $1000 noted. However, plaintiff testified that about a month before Christmas, 1943, he gave defendant $300 which he did not enter in the book, but concerning which plaintiff further testified that defendant's wife had said to him that her husband would not forget it and would pay it to plaintiff any time he asked for it. Plaintiff, therefore, claimed that the total sum due him from the defendant was $1300.

Defendant admitted that he made the entries in the red book; that he had received the sums entered therein; and that he had a balance in his hands on May 5, 1942 of $1000 belonging to the plaintiff. He denied that he had ever received from the plaintiff for safekeeping any sum of money except such as was noted by him in the red book. He further testified that on divers dates after May 5, 1942 he had issued checks for various sums payable either to the plaintiff or to another for his benefit totaling $998.50, which, he claimed, should be deducted from the balance noted in the red book. Those checks, duly canceled as paid, are in evidence as exhibits. Defendant thus claimed that if any sum was due from him it was not more than $1.50.

The relations of the parties and how they dealt with each other play an important part in determining the truth of their respective claims. Plaintiff, at the time of the trial, was an old man of eighty years who could neither read nor write. He had recently married a second time, and his wife was much younger than himself. Until the time of this marriage the relations between plaintiff and defendant were extremely friendly. Thereafter they appear to have cooled. Plaintiff's first wife, who had deceased sometime in March, 1941, was defendant's aunt.

Defendant was a much younger man than plaintiff, being

fifty-nine years of age at the time of the trial. He had been assisting plaintiff in taking care of his financial affairs since 1904, when he came to Providence from Massachusetts, at the request of plaintiff and his wife, who had no children and wanted to adopt him as their son. He was not adopted but his relations with the plaintiff became very close and confidential, and continued so until the present controversy between them arose. In 1934 plaintiff became fearful of having money in his house and arranged with defendant, who was then in business and had an account with a bank, to keep his money for him. It was a friendly arrangement under which no gain was to accrue to either party. Plaintiff was to receive no interest and defendant was to receive no compensation for keeping the money safely.

It appears from the testimony of both parties that any money which was turned over by the plaintiff to the defendant for safekeeping was to be evidenced by an entry in the red book. Apparently there were other occasions when plaintiff gave defendant money not for safekeeping but for certain special purposes, and on such occasions no entry was made in the red book. For example, defendant testified in that connection as follows: "Q. And since you have been using the book has he given you money to pay his bills which you did not put in that book? A. Yes." Defendant further testified as follows: "Q. Now, since May 5, 1942 — Do you remember that date now? A. Yes. Q. That is the last date in that book, which is 'Plaintiff's Exhibit 1.' Did he continue to give you money to pay bills for him? A. Yes, in some cases he did. Q. And in other cases what happened? A. In other cases I checked it off the book."

In thus testifying, the witness must have been confused as there are no payments "checked off" in the red book after May 5, 1942. Apparently, however, he was by no means certain about what checks he made out after that date for which he had received no money from the plaintiff. In direct examination, after testifying as above, he was

asked: "Is there any way that you can remember the date or the time when you finished using up that thousand dollars that is represented in that book?" and he answered: "No, because I haven't got no record, I never keep any record or anything. I don't remember just when I finished paying."

On the other hand plaintiff testified in substance that whenever he got a check from defendant to pay a bill, he gave defendant money for the check and that after May 5, 1942 he did not receive from the defendant any money that was deductible from the balance in the book. And the uncontradicted evidence also appears to be that whenever any payment was made before May 5, 1942 from the funds entered in the red book a notation of such payment was made in the book. If plaintiff is to be believed, that course of conduct continued at least as to payments to him, but if defendant's testimony is accepted, such conduct was varied after May 5, 1942; and, moreover, it was never followed thereafter with reference to payments to plaintiff, although, according to defendant, numerous checks totaling $998.50, almost sufficient to exhaust the balance of $1000, were issued to the plaintiff, or for his benefit, on the credit of the funds in the red book.

The testimony of the defendant in this respect did not impress the trial justice. It did not, in his opinion, overcome the evidence of the red book itself as to payments. Nor was he impressed by the plaintiff's testimony that he had paid defendant $300 in 1943, which was not entered in the book and added to the balance of $1000. The trial justice stated in his decision that he was not convinced that defendant had made "a satisfactory explanation showing how this balance was paid" and that the plaintiff was in error about the unrecorded payment of $300, but that he was "satisfied that there is money due this plaintiff." He further stated: "And it seems to the Court that if these parties faithfully kept this little red book from 1934 to 1942, that the Court has a right to assume that had the

defendant given the plaintiff any part of that thousand dollars after May 5, 1942, an entry would have been made in the book."

We have discussed and quoted from the evidence to the above extent not to indicate any opinion as to what the verdict should be, but merely to give some idea of the situation which was presented to the trial justice on plaintiff's motion for a new trial and to show that he had properly performed his duty under the rule. Apparently he was convinced that the jury's verdict did not respond to the merits of the controversy and did not do substantial justice between the parties. After carefully reviewing all the evidence, we cannot say that his decision was clearly wrong.

The defendant's exception is overruled, and the case is remitted to the superior court for a new trial.

Moss, J., did not participate in the decision.

*Ralph Rotondo,* for plaintiff.

*Dooley, Dunn & Paolino, Thomas J. Paolino, Benedetto A. Cerilli,* for defendant.